IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Stephen Michaelson, ) | |
| ) | |
| Plaintiff, ) | Case No. 13 C 50228 |
| ) | |
| vs. ) | |
| ) | |
| CBE Group, Inc., ) | |
| ) | Judge Philip G. Reinhard |
| Defendant. ) | |

## ORDER

For the reasons stated below, defendant's motion [44] for summary judgment is granted. This case is terminated.

## STATEMENT-OPINION

Plaintiff, Stephen Michaelson, brings this action against defendant, CBE Group, Inc. asserting, in Count I of his complaint, claims for violation of 15 U.S.C. §§ 1692d and 1692f which are provisions of the Fair Debt Collection Practices Act ("FDCPA"). Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1367(a). Defendant moves [44] for summary judgment.

Originally, plaintiff also sought to recover in Count I on FDCPA claims pursuant to 15 U.S.C. §§ 1692d(5) and 1692g(a). In Count II, he sought to recover on claims under the Illinois Collection Agency Act, 225 ILCS 425/1 et seq. ("ICAA") In Count III he claimed a violation of provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. (TCPA). In his brief in opposition to defendant's motion for summary judgment, plaintiff abandons all of his ICAA and TCPA claims and his FDCPA claims based on 15 U.S.C. §§ 1692d(5) and 1692g(a). Accordingly, defendant is entitled to summary judgment on those claims.

Plaintiff's remaining claims are for violations of 15 U.S.C. §§ 1692d and 1692f. Section 1692d provides "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section." This language is followed by a list of specific conduct which is deemed a violation. Section 1692f provides "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section." This language is followed by a list of specific conduct which is deemed a violation. Plaintiff does not claim defendant engaged in any of the specific violations listed in either section.

1

Plaintiff opened an account with ComEd, used services provided by ComEd, and incurred a financial obligation to ComEd. When he established his account with ComEd, plaintiff gave ComEd his cell phone number as his contact number. Plaintiff understood that number would be used to contact him if he did not pay his ComEd bill. When plaintiff's account with ComEd became delinquent, ComEd retained defendant to collect plaintiff's debt to ComEd.

The conduct of defendant plaintiff claims was unlawful is the same for his claims under both section 1692d and section 1692f. In his brief, plaintiff says that from June 13 to June 25, 2013 defendant called him on his cell phone at least 14 times over the course of 12 days with as many as 3 calls in one day. He answered these calls on at least 10 occasions. When plaintiff answered defendant's calls, he heard silence or static-like noise for 10 to 20 seconds before the call would drop or plaintiff would hang-up. During these calls no representative of defendant ever came on the line nor did the caller identify himself. He maintains defendant repeatedly called him "with no actual ability to connect the answered call with its debt collector." Plaintiff contends defendant's calls were irritating, annoying and disruptive to plaintiff, had the "natural consequence to harass," and were unfair or unconscionable.

Plaintiff was asked in his deposition "what was the communication going on in those 10 to 12 calls before you asked them to stop calling you?" He responded "[t]he number would ring on my cell phone. I would see the number, not recognize the number. I would answer the phone, thinking that perhaps somebody was inquiring to do business with me. I would answer the phone, because I always answered all calls, and I would hear nothing, or I would hear what I considered to be like computer staticky noise, which was familiar to me as the kind of noise you would hear in a call center waiting to be connected to somebody. So that is what made me think, this is probably a bill collector. This is probably an auto dialer. I just don't know who it is. And this happened on the 10, 12, maybe 15 times where I would see the same number, I would answer, hear nothing, not hear a representative come on, have a feeling that it was a bill collector, I have a feeling that it was an auto dialer, and then I would hang up, or the line would drop. They themselves would drop the call. There was never a physical representative who would come on to talk to me." (Pl. Ex. A., p. 54-55.)

In addition to these calls, four calls were placed by defendant's representatives to plaintiff which resulted in conversations. Plaintiff is not claiming any of the calls resulting in conversations were violations of the FDCPA.

The issue is whether defendant's use of a predictive dialing system to place calls to plaintiff on his cell phone (at the number plaintiff had provided to the creditor for whom defendant was collecting), where the calls did not promptly connect plaintiff to a human when plaintiff answered -- leaving him listening to dead air for a period of time [1]– violates 15 U.S.C. § 1692d or § 1692f, where the calls were not placed with intent to annoy, abuse, or harass the plaintiff.[2]

---

[1] Commonly known as "abandoned calls". See discussion below.

[2] Defendant disputes that it used a predictive dialing system to call plaintiff and that any of the calls it placed to plaintiff, other than the four calls that resulted in conversations, lasted longer than zero seconds. At the summary judgment stage, the court accepts as true plaintiff's deposition testimony that he received 10 or more calls

"Summary judgment is appropriate where the admissible evidence reveals no genuine issue of any material fact." Hess v. Bresney, No. 14-1921, 2015 WL 1963483, *4 (7th Cir. May 4, 2015). "An issue of material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. (internal quotation marks and citation omitted.) In applying section 1692d, the question whether conduct harasses, oppresses, or abuses will ordinarily be a question for the jury, but summary judgment or dismissal is appropriate where, as a matter of law, the facts presented "do not have the natural consequence of harassing or abusing a debtor." Harvey v. Great Seneca Financial Corp., 453 F.3d 324, 330 (6th Cir. 2006). Similarly, in applying section 1692f, "[w]hether a particular collection practice other than those specified in §1692f qualifies as unfair or unconscionable is assessed objectively and is a question for the jury unless reasonable jurors could not find that the practice described rose to that level." Todd v. Collecto, Inc., 731 F.3d 734, 739 (7th Cir. 2013).

As noted above, plaintiff does not contend defendant placed these calls with the intent to harass, oppress or abuse plaintiff. In fact, he has expressly abandoned his section 1692d (5) claim. Section 1692d (5) makes "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy abuse or harass any person at the called number" a violation of section 1692d's prohibition on engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. §1692d (5) (emphasis added). Plaintiff argues that defendant's placing these calls, which left him on the line with silence on the other end, were violations because they had the natural consequence of annoying, abusing, or harassing. He contends defendant did not have to have the intent to annoy, abuse, or harass, 1692d (5) notwithstanding, because 1692d (5) does not limit the general application of the statute's general prohibition of conduct that has "the natural consequence" to "harass, oppress, or abuse."

There do not appear to be any decided cases involving section 1692d or 1692f of the FDCPA and this factual scenario (calls, placed by a debt collector using some type of predictive dialer, where the calls do not promptly connect the person answering the call to a human, leaving the answerer listening to dead air but not claimed to have been placed with intent to annoy, abuse, or harass, where the number called was supplied to a creditor by the person answering the call). Plaintiff cites Hicks v. America's Recovery Solutions, LLC, 816 F. Supp. 2d 509 (N.D. Ohio 2011), Akalwadi v. Risk Mgmt. Alternatives, Inc., 336 F. Supp. 2d 492 (D. Md. 2004), Sussman v. I.C. Sys., Inc., 928 F. Supp.2d 784 (S.D. N.Y. 2013), and Carmen v. CBE Group, Inc., 782 F. Supp. 2d 1223 (D. Kan. 2011) in support of his claims. However, Hicks was a section 1692d(5) (calling repeatedly or continuously with intent to annoy) case where there was evidence in the record of intent (calling on a daily basis, often twice a day, despite being advised the plaintiffs were represented by a debt management company). Plaintiff has specifically

---

with dead air time lasting 10 to 20 seconds. At the summary judgment stage, the court accepts the fact that whatever system defendant used to call plaintiff, it unintentionally resulted plaintiff answering the call and not being connected to a representative for 10 to 20 seconds on 10 or more occasions. In its analysis, the court will assume the use of a predictive dialer.

3

abandoned his section 1692d(5) claim. Hicks says nothing about calls made without intent to annoy, abuse or harass.

Akalwadi was also a section 1692d(5) "intent" case involving phone messages left for the plaintiff by a debt collector indicating the plaintiff should contact the debt collector with respect to the debt. It says nothing about calls made without intent to annoy, abuse, or harass.

Plaintiff cites Sussman noting it found the plaintiff had stated a claim for a violation of 15 U.S.C. § 1692d(6) where it was alleged defendant hung up either prior to or as soon as the plaintiff answered the call. However, section 1692d(6) prohibits "the placement of telephone calls without meaningful disclosure of the caller's identity." Here, plaintiff does not argue he has a section 1692d(6) claim that defendant failed to meaningfully disclose its identity.

Carmen does not help plaintiff either. He quotes it for the proposition that "repeated, intentional calls, terminated before any communication is made" could be inferred unfair and unconscionable – a violation of section 1692f. However, this quote is taken out of context. The full quote is as follows "In its Order denying CBE's motion to dismiss, the Court noted that it may be 'inferred that repeated, intentional calls, terminated before any communication is made,' would be unfair or unconscionable. However, on summary judgment, there is no evidence that CBE made repeated, intentional calls purposefully terminated before any communication is made– in other words, no intentional hang-up calls, as previously asserted." Carmen, 782 F. Supp. 2d at 1235 (emphasis added). As previously noted, plaintiff is not claiming defendant acted with intent. Plaintiff argues defendant "operates a sloppy system that repeatedly calls people with whom [defendant] has no ability to talk." Carmen dealt with intent, found there was none, and thus, has no applicability to the case at hand.

Though these types of abandoned calls (those placed without intent to abuse, annoy, or harass) do not appear to have been addressed by the courts in the context of sections 1692d or 1692f, abandoned calls are the subject of both Federal Communications Commission ("FCC") rules (47 CFR 64.1200 (a)(7)) (enforcing the TCPA) and the Federal Trade Commission's ("FTC") Telemarketing Sales Rule ("TSR") (16 CFR 310.4 (b)(iv)).

The TCPA prohibits making a call, unless it is made with the prior express consent of the called party, that uses an automatic dialing system to a cellular telephone. 47 U.S.C. § 227(b)(1). Giving a creditor a cell phone number during the transaction that resulted in the debt owed is considered to be giving the creditor prior express consent to contact the cell phone subscriber at that number regarding the debt. See Soppet v. Enhanced Recovery Company, LLC, 679 F.3d 637, 643 (7th Cir. 2012), citing, In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 23 FCC Rcd. 559 ¶¶ 9, 10 (Jan. 4, 2008) ("2008 TCPA Order"). Calls placed by third party collectors on behalf of a creditor are treated as if the creditor itself placed the call. 2008 TCPA Order, ¶ 10. Calls solely for the purpose of debt collection are not telephone solicitations and do not constitute telemarketing. Id. Therefore, defendant, as a third party collector for ComEd, is not subject to the TCPA prohibition on the use of autodialers to wireless numbers nor the FCC rules promulgated thereunder.

As to the TSR, a telemarketer is prohibited from abandoning calls. 16 CFR 310.4 (b)(iv). A telemarketer is any person who engages in telemarketing 16 CFR 310.2(cc). Telemarketing "means a plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more

4

than one interstate telephone call." 16 CFR 310.2(dd). Defendant was not attempting to induce the purchase of goods or services or a charitable contribution so the abandoned call provisions of the TSR, 16 CFR 310.4 (b)(iv), do not apply to the calls it placed to plaintiff.

The FDPCA (as amended in 2010) grants rulemaking authority to the Consumer Financial Protection Bureau ("CFPB") "with respect to the collection of debts by debt collectors." 15 U.S.C. § 1692l(d). As yet, the CFPB has not made any rules under the FDCPA. In an Advance Notice of Proposed Rulemaking ("ANPR") the CFPB sought comment about debt collection practices. Debt Collection Rule, 78 Fed. Reg. 67848 (advance notice Nov. 12, 2013). In the ANPR, CFPB specifically seeks comment on "Q99: Should there be standards limiting call abandonment or dead air for debt collection calls, similar to the standards under the FTC's Telemarketing Sales Rule? Are there reasons why debt collection standards should be more stringent or more lenient than standards for telemarketing?" 78 Fed. Reg. 67871. At this point, the CFPB is in the "Prerule Stage" where it is "considering whether rules governing the collection of debts are warranted under the FDCPA or other CFPB authorities." CFPB Rulemaking Agenda, Fall 2014. (available at
http://www.reginfo.gov/public/do/eAgendaViewRule?pubId=201410&RIN=3170-AA41).

Prior to the creation of the CFPB, the FTC was charged with enforcing compliance with the FDCPA but did not have rulemaking authority under it[3]. In its report, Collecting Consumer Debts: The Challenge of Change, Feb. 2009 (available at www.ftc.gov/sites/default/files/documents/reports/collecting-consumer-debts-challenges-change-federal-trade-commission-workshop-report/dcwr.pdf), the FTC noted the use of predictive dialers by debt collectors and that "[a]n inevitable side effect of using predictive dialers to contact consumers is that a dialer will sometimes reach more consumers than can be connected to available collectors. In these situations, a predictive dialer either disconnects the call (resulting in a 'hang up' call) or keeps the consumer connected with no one on the other end." Id. at 37. The report then cites Section 1692d(5) (causing a phone to ring repeatedly or continuously with intent to annoy, abuse, or harass) and then states the FTC "proceeds on a case-by-case basis in determining whether 'hang-up' and 'dead air' calls from a collector violate Section [1692d(5)]."

This report indicates that during the time it was primarily responsible for enforcing the FDCPA, the FTC only took enforcement action against debt collectors placing abandoned calls in the context of Section 1692d(5) "intent to annoy abuse or harass." The court did not find anything to indicate that the CFPB pursues a different approach.

In Soppet, the Court of Appeals observed that a court should not "try to keep a statute up to date." Soppet, 679 F.3d at 642. "Legislation means today what it meant when it was enacted." Id. When the FDCPA was enacted, Congress specifically provided that a debt collector "[c]ausing a telephone to ring or engaging any person in a telephone conversation repeatedly or continuously with intent to annoy, abuse or harass any person at the called number" was a violation of Section 1692d. Since its enactment, no court appears to have decided that causing a phone to ring repeatedly or leaving the answerer listening to dead air for an extended period of

---

[3] Prior to its 2010 amendment, 15 U.S.C. § 1692l(d) provided: "Neither the [FTC] nor any other agency . . . may promulgate trade regulation rules or other regulations with respect to the collection of debts by debt collectors."

5

time <u>without intent</u> to annoy, abuse, or harass was a violation of section 1692d because the natural consequence of the conduct was to harass, oppress, or abuse such a person. Neither the FTC nor the CFPB, the agencies charged with administering the FDCPA, have pursued enforcement actions outside of the "intent to annoy, abuse or harass context." The CFPB has not promulgated regulations on the subject.

If Congress wants to make a debtor collector calling a person repeatedly using a predictive dialer that fails to connect the called party with a representative of the debt collector within "x" seconds a violation of section1692d, without regard to any intent to annoy, abuse, or harass, it can do so. The CFPB may, after careful consideration of the comments it solicited on the subject, ultimately promulgate rules governing abandoned calls placed without intent to annoy, abuse or harass. However, in the absence of Congressional action or final CFPB rule, the court will not extend Section 1692d to find the factual situation presented by plaintiff in this case to be a violation Section 1692d.

Plaintiff relies on <u>LeBlanc v. Unifund CCR Partners</u>, 601 F.3d 1185, 1200 (11th Cir. 2010) to support his section 1692f claim. He quotes <u>LeBlanc,</u> which defines "unfair" as "marked by injustice, partiality, or deception." <u>Id.</u> It states conduct is deceptive or unfair "if it has the tendency or the capacity to deceive." <u>Id.</u> It says "[t]he term 'unconscionable' means 'having no conscience'; 'unscrupulous'; 'showing no regard for conscience'; 'affronting the sense of justice, decency, or reasonableness.'" <u>Id.</u> Plaintiff's entire argument as to why defendant's conduct violated section 1692f is as follows; "It is undisputed that [defendant] was calling Plaintiff for the purpose of collecting a debt. [Defendant] repeatedly called [plaintiff] with no actual ability to connect the answered call with its debt collector. This is unfair debt collection – consumers should not be subject to repeated, needless, empty calls."

Looking to the definitions from <u>LeBlanc</u> offered by plaintiff, his claim that defendant's conduct was unfair or unconscionable fails as a matter of law. He does not argue in what way the calls were unjust, deceptive or showed partiality. He does not argue in what way the calls were unscrupulous, showed no regard for conscience or affronted the sense of justice, decency or reasonableness. "Perfunctory or undeveloped arguments are waived." <u>Estate of Moreland v. Dieter</u>, 395 F.3d 747, 759 (7th Cir. 2005).

For the foregoing reasons, defendant's motion [44] for summary judgment is granted.[4] This case is terminated.

Date: 5/21/2015          ENTER:

*Philip G. Reinhard*

United States District Court Judge

Electronic Notices. (LC)

---

[4] Because the foregoing resolves the case, the court need not address defendant's other arguments in support of summary judgment.